UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

```
----------------------------------------------------x
```

BRADLEY W. CONDON, *an individual*

      *Plaintiff,*

    v.

NCL (BAHAMAS) LTD., *a foreign corporation registered to conduct business in the State of Florida*

      *Defendant.*

Case No.: 1:25-cv-26006-JB/Torres

```
----------------------------------------------------x
```

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **BRADLEY W. CONDON** ("Plaintiff"), by and through undersigned counsel, sues Defendant, **NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE HOLDINGS LTD.** ("Defendant" or "NCL"), and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for damages, equitable relief, and other legal relief arising from Defendant's unlawful disability discrimination, failure to accommodate, retaliation, and interference with protected rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); retaliation and interference under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and disability discrimination and retaliation under the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA").

2. Plaintiff alleges that Defendant denied reasonable accommodation, failed to engage in a good-faith interactive process, retaliated against Plaintiff for requesting accommodation and

1

taking protected leave, denied advancement opportunities, subjected Plaintiff to heightened scrutiny and exclusion, placed Plaintiff on a performance improvement plan with vague metrics, and ultimately terminated Plaintiff's employment on a pretextual basis.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the ADA and FMLA.

4.      This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

5.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its principal place of business in Miami, Florida, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

6.      Defendant is subject to personal jurisdiction in Florida because it maintains its principal place of business at 7665 Corporate Center Drive, Miami, Florida 33126, and committed the acts complained of in this District.

## PARTIES

7.      Plaintiff Bradley W. Condon is a natural person and resident of Fort Lauderdale, Broward County, Florida.

8.      Defendant NCL (Bahamas) Ltd., doing business as Norwegian Cruise Line Holdings Ltd., is a foreign corporation registered to conduct business in the State of Florida, with

2

its principal place of business in Miami, Miami-Dade County, Florida. Defendant employs approximately 41,000 employees.

9. At all material times, Defendant was an employer within the meaning of the ADA, the FMLA, and the FCRA.

**CONDITIONS PRECEDENT**

10. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 30, 2024, alleging disability discrimination and retaliation.

11. The EEOC issued a Dismissal and Notice of Right to Sue dated April 21, 2025.

12. This action was filed within ninety (90) days of Plaintiff's receipt of the Right-to-Sue Notice.

13. All conditions precedent to the institution of this action have been performed, have occurred, or have been waived.

**GENERAL ALLEGATIONS**

**A.    PLAINTIFF'S EMPLOYMENT**

14. On or about April 20, 2022, Defendant extended Plaintiff a conditional offer of employment for the position of CRM Specialist in the IT CRM, O&R Web & Res department at Defendant's Miami, Florida office, with a starting salary of $64,000 per year and a start date of May 9, 2022.

15. Plaintiff began employment with Defendant on or about May 9, 2022, as a Salesforce CRM Specialist.

16.     Plaintiff reported to supervisor Stella Reinis, Manager of CRM Applications. Jesus De Barros served as Senior Director over Plaintiff's department. Rusty Collins also served in a supervisory capacity during the relevant period.

17.     Plaintiff's department consisted of approximately eighteen (18) employees, and approximately three (3) other employees held the same CRM Specialist position as Plaintiff, each overseeing different business areas.

18.     Plaintiff was never provided with a formal orientation, employee handbook, or personnel manual upon hire. Plaintiff was not given comprehensive onboarding regarding Defendant's IT policies or work rules.

**B.     PLAINTIFF'S DISABILITIES**

19.     Plaintiff has medical conditions including post-traumatic stress disorder ("PTSD") stemming from a severe automobile accident in 2011, which prevents him from driving and causes severe anxiety related to transportation; HIV-positive status, which compromises his immune system; and severe social anxiety that substantially limits face-to-face interactions.

20.     Plaintiff's impairments substantially limited one or more major life activities, including concentrating, thinking, interacting with others, and immune-system function.

21.     Plaintiff was, at all material times, a qualified individual able to perform the essential functions of his position with or without reasonable accommodation

**C.     PLAINTIFF'S EXEMPLARY PERFORMANCE**

22.     Before his accommodation requests, Plaintiff received strong positive feedback for his knowledge, work product, support, hard work, and dedication. His supervisor Stella Reinis praised Plaintiff's performance, stating words to the effect that his work was like listening to a

great administrator with extensive knowledge, that he stepped up to his role, and expressing gratitude for his support, hard work, and dedication.

23.     Plaintiff obtained four Salesforce certifications during his employment, demonstrating sustained commitment to professional development.

24.     Plaintiff automated the user creation process, increasing team efficiency.

25.     Plaintiff identified and prevented a critical security breach in which an unauthorized external party had gained administrative access to Defendant's Salesforce production environment. Plaintiff's prompt reporting secured the environment and prevented further unauthorized access.

26.     Plaintiff routinely closed more support tickets than his peers and developed innovative solutions to business problems that supervisors had previously deemed impossible.

**D.     INITIAL ACCOMMODATION REQUESTS AND FAILURE TO ACCOMMODATE**

27.     Because of Plaintiff's PTSD, Plaintiff could not drive to work and relied on public transportation for commuting, which caused severe anxiety and panic symptoms.

28.     In or around early June 2022, Plaintiff informally requested a reasonable accommodation from supervisor Rusty Collins to work from home full time due to his medical conditions, including transportation limitations related to PTSD and his immunocompromised status during the ongoing COVID-19 pandemic.

29.     Defendant was aware of Plaintiff's medical limitations and need for accommodation.

30.     Rather than engage in a good-faith interactive process to explore Plaintiff's request or reasonable alternatives, Defendant suggested Plaintiff drive to work, even though Plaintiff had already explained that he could not do so because of his PTSD.

31.     Defendant did not timely provide the requested accommodation and did not meaningfully pursue reasonable alternatives.

32.     During 2022, Plaintiff was nevertheless permitted to work from home on multiple occasions, including May 13 through May 17, May 25, June 2, July 12, and July 27, demonstrating that Plaintiff's duties could be performed remotely.

**E.     DISPARATE TREATMENT**

33.     Defendant maintained a practice of allowing other employees, including at least six members of the Salesforce team, to work fully remotely, including employees without medical limitations.

34.     While Plaintiff was denied full-time remote work as an accommodation, other employees were allowed to work remotely for non-medical reasons, including personal travel and visiting family in other countries.

35.     Because Plaintiff was not timely accommodated, he was forced to continue commuting by public transportation, which worsened his anxiety and exposed him to heightened health risks. During this period, Plaintiff contracted COVID-19 twice and Monkeypox, and absences related to these illnesses negatively affected his first performance review.

36.     Plaintiff's supervisor later acknowledged to Plaintiff that she would have given him a better evaluation score had he been in the office more, directly linking the negative review to Plaintiff's disability-related absences.

**F.     MENTAL HEALTH CRISIS AND FMLA LEAVE**

37.     The continued denial of accommodation and stress associated with commuting contributed to a mental-health crisis.

6

38.     On or about May 24, 2023, Plaintiff began approved leave under the FMLA, which continued through June 23, 2023.

39.     Plaintiff was eligible for FMLA leave because he had worked for Defendant for at least twelve months, had worked at least 1,250 hours during the preceding twelve months, and Defendant employed the requisite number of employees for FMLA coverage.

40.     During Plaintiff's FMLA leave, Defendant reassigned Plaintiff's duties to other team members.

## G.     FORMAL ACCOMMODATION REQUEST AND APPROVAL

41.     On or about June 19, 2023, Plaintiff's psychologist, Dr. Nicholas Joyce, completed an ADA Medical Assessment Form confirming Plaintiff's anxiety-related impairment and recommending remote work as a reasonable accommodation.

42.     Upon returning from FMLA leave on or about June 23, 2023, Plaintiff submitted a formal written request for remote-work accommodation.

43.     On or about June 29, 2023, Defendant approved Plaintiff's request and granted remote work from July 3, 2023, through January 3, 2024.

44.     Defendant's approval of remote work confirms that Plaintiff could perform the essential functions of his position remotely and that the accommodation was feasible and did not impose undue hardship.

## H.     SYSTEMATIC RETALIATION FOLLOWING ACCOMMODATION

45.     After Plaintiff requested and received accommodation, Defendant began a pattern of retaliatory and discriminatory conduct, including the following:

### 1. DENIAL OF PROMOTION OPPORTUNITIES

46.     Plaintiff had been trained for advancement to a CRM Analyst position and possessed qualifications and experience for advancement. Plaintiff's supervisor had assured Plaintiff that he would eventually advance to a management role.

47.     Plaintiff's supervisor initially told him the CRM Analyst role had been filled by an external hire, but later announced in a team meeting that the position was open only to "in-office applicants," thereby excluding Plaintiff because he was working remotely under an approved disability accommodation.

48.     Defendant awarded advancement to a less-qualified in-office colleague instead of Plaintiff. One of the fully remote employees without a medical accommodation was later promoted to the same CRM Analyst position.

49.     When Plaintiff inquired about the promotion decision, he was told "not to compare himself to others."

### 2. EXCLUSION FROM CRITICAL WORK FUNCTIONS

50.     Plaintiff was intentionally excluded from bi-weekly meetings regarding a "profile to permission sets" transition, a project that directly and significantly affected his core job responsibilities.

51.     Plaintiff was the only person among the eighteen-member team excluded from team meetings on multiple occasions. Other remote employees were not similarly excluded.

### 3. DENIAL OF PROFESSIONAL DEVELOPMENT

52.     Plaintiff was next in line to attend Dreamforce, a critical Salesforce conference fully paid for by Defendant, which was essential for professional development in his role.

8

53.     After Plaintiff received his accommodation, Defendant decided that Plaintiff's department would not send anyone to the conference. Instead, another department sent two individuals, one of whom worked remotely without any medical accommodation.

### 4.  PUNITIVE WORK ASSIGNMENTS AND PERFORMANCE REVIEW MANIPULATION

54.     During the week Plaintiff's performance review was due, Plaintiff was assigned a highly burdensome, manual task with an unreasonable deadline. After Plaintiff completed the task meeting the original requirements, a new requirement was added, setting him up for failure.

55.     Plaintiff's performance review was postponed and subsequently included negative comments about this task, even though it fell outside the review period.

56.     Plaintiff's second evaluation included criticism that he was not handling his share of work, despite Plaintiff outperforming peers in the same role. Because Defendant could no longer penalize Plaintiff for working from home after the accommodation was approved, Defendant instead used other pretextual performance criticisms.

57.     Plaintiff was placed on a performance improvement plan with vague metrics.

### 5.  HOSTILE WORK ENVIRONMENT AND ISOLATION

58.     During team meetings, colleagues made passive-aggressive remarks about Plaintiff working from home.

59.     Plaintiff was subjected to increased scrutiny and micromanagement that was not applied to other employees.

60.     Plaintiff was removed from projects he had substantially completed to work on less desirable tasks, while others presented his work to the business and received credit for his contributions.

### 6. *INTERNAL ETHICS COMPLAINT AND FURTHER RETALIATION*

61.     Plaintiff submitted a complaint to Defendant's internal ethics board, presenting evidence of his supervisor's conduct. The ethics board sided with Plaintiff's supervisor and refused to disclose the evidence the supervisor had submitted against Plaintiff, stating that Plaintiff was not privy to that information.

62.     Following Plaintiff's ethics complaint, the retaliatory treatment intensified.

## I.     CONTINUED HIGH PERFORMANCE DESPITE RETALIATION

63.     Despite the retaliatory treatment, Plaintiff continued to perform at a high level while working remotely, including closing 988 catalog tasks during the relevant review period, which represented approximately 47.59% of the team's total output.

64.     Plaintiff's high performance while working remotely further demonstrates that the accommodation was reasonable, effective, and did not impose undue hardship on Defendant.

## J.     EXTENSION OF ACCOMMODATION AND CONTINUED RETALIATION

65.     On or about January 26, 2024, Defendant approved a second remote-work accommodation effective January 29, 2024, through July 1, 2024, further confirming the reasonableness and necessity of the accommodation.

66.     Retaliatory treatment continued and intensified during this period, including continued exclusion from advancement opportunities and professional development.

## K.     PRETEXT FOR TERMINATION

67.     In or around March 2024, Defendant reported a potential IT security breach and used this as an opportunity to target Plaintiff for investigation.

68.     While Defendant claimed to have frozen all Salesforce accounts during the investigation, in reality, Defendant selectively locked Plaintiff out of all his work accounts while

other employees' access remained unchanged. Plaintiff was locked out of his accounts while in the middle of performing work tasks, without prior notice.

69.     Other Salesforce team members whose accounts were actually linked to the security breach that Plaintiff had previously identified never lost access to their accounts, and no comparable investigation was performed on them.

70.     Plaintiff's co-workers appeared to know about the forthcoming adverse action before it occurred. One co-worker removed Plaintiff from the team's WhatsApp group message before Plaintiff was even notified of the suspension.

## L.     TERMINATION UNDER FALSE PRETENSES

71.     On or about March 6, 2024, Defendant terminated Plaintiff's employment.

72.     Defendant initially stated that Plaintiff was being placed on suspension pending investigation of a "possible security breach." Approximately two and a half weeks later, Defendant informed Plaintiff that his account had been cleared of any connection to the security breach but that he was being terminated for using a personal computer to perform a work-related task.

73.     The stated reason for termination is pretextual for the following reasons:

(a)     Plaintiff had informed the ethics board that he would use a personal computer to compile and present evidence against his supervisor without his supervisor's knowledge, and the ethics board was aware of this before the investigation;

(b)     Testing how emails render in different email clients was a necessary and standard part of Plaintiff's job duties;

(c)     Other employees on Plaintiff's team used personal computers for work-related activities, but only Plaintiff was investigated;

11

(d)     Plaintiff was never provided with comprehensive onboarding regarding IT policies and was never made aware of any policy prohibiting this standard practice;

(e)     Plaintiff never signed any document acknowledging company IT policies that would prohibit this work-related activity; and

(f)     Defendant's shifting explanations for termination—from security breach to use of a personal computer—demonstrate the pretextual nature of the stated reasons.

## M.    DAMAGES

74.    Plaintiff remained unemployed from March 6, 2024, until on or about June 23, 2025, when he obtained new employment as a Technology & Systems Specialist at Waste Solution Services at a salary of $75,000 per year.

75.    Plaintiff received no severance pay and was not offered continued medical insurance at a group rate upon termination.

76.    Plaintiff never received a salary increase during his employment with Defendant.

77.    Plaintiff's position was filled after his termination.

78.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, loss of professional opportunities, emotional distress, mental anguish, and other damages.

## COUNT I

## ADA DISCRIMINATION

(42 U.S.C. § 12112)

79.     Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

80.     Plaintiff is disabled within the meaning of the ADA.

81.     Plaintiff was a qualified individual able to perform the essential functions of his job, with or without reasonable accommodation.

82.     Defendant subjected Plaintiff to adverse employment actions, including denial of equal promotional opportunity, discriminatory terms and conditions of employment, selective discipline and investigation, and termination.

83.     Defendant treated Plaintiff adversely because of Plaintiff's disability and because Plaintiff was working under a disability-related accommodation.

84.     Defendant's statement that the CRM Analyst promotional opportunity was limited to "in-office applicants" excluded Plaintiff solely because he was working remotely pursuant to an approved ADA accommodation.

85.     Plaintiff's strong job performance, Defendant's later approval and renewal of remote-work accommodation, Defendant's shifting explanations for termination, and the pattern of escalating adverse actions support a plausible inference of disability discrimination.

86.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, back pay, front pay, equitable relief, prejudgment interest, costs, reasonable attorney's fees, and all other relief permitted by law.

## COUNT II

### ADA FAILURE TO ACCOMMODATE

(42 U.S.C. § 12112(b)(5)(A))

87.     Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

88.     Plaintiff is disabled within the meaning of the ADA, and Defendant knew of Plaintiff's disabilities and related limitations.

89.     Plaintiff requested a reasonable accommodation, including full-time remote work.

90.     Remote work would have enabled Plaintiff to perform the essential functions of his position, as demonstrated by Plaintiff's subsequent performance closing 988 catalog tasks—approximately 47.59% of the team's total output—during the period when accommodation was granted.

91.     Defendant failed to timely provide reasonable accommodation during the initial period after Plaintiff requested it and failed to engage in a good-faith interactive process concerning that request.

92.     Defendant's later approval and renewal of remote-work accommodation supports the inference that the requested accommodation was reasonable, feasible, and did not impose undue hardship.

14

93.     As a direct and proximate result of Defendant's failure to accommodate, Plaintiff suffered damages, including worsening symptoms, illness, lost opportunities, and other harm.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, back pay, front pay, equitable and injunctive relief, prejudgment interest, costs, reasonable attorney's fees, and all other relief permitted by law.

## COUNT III

## ADA RETALIATION

(42 U.S.C. § 12203)

94.     Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

95.     Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodation in June 2022, submitting a formal accommodation request with medical support in June 2023, filing an internal ethics complaint, and opposing disability-based mistreatment.

96.     Defendant subjected Plaintiff to materially adverse actions after Plaintiff engaged in protected activity, including exclusion from advancement opportunities, exclusion from important meetings, denial of professional development, heightened scrutiny, placement on a performance improvement plan with vague metrics, selective investigation, and termination.

97.     The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions, the pattern of escalating retaliatory conduct, and Defendant's direct reference to Plaintiff's remote-work status as a basis for denying promotion support a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

98.     Defendant's stated reasons for its actions were pretextual.

99.     As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, back pay, front pay, equitable relief, prejudgment interest, costs, reasonable attorney's fees, and all other relief permitted by law.

## COUNT IV

## ADA INTERFERENCE, COERCION, AND INTIMIDATION

### (42 U.S.C. § 12203(b))

100.     Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

101.     Plaintiff attempted to exercise and enjoy rights protected by the ADA, including the right to request accommodation and the right to be free from discrimination for doing so.

102.     Defendant interfered with, coerced, intimidated, or threatened Plaintiff in the exercise or enjoyment of those rights by discouraging accommodation, tying promotional opportunities to in-office status, subjecting Plaintiff to retaliatory scrutiny and exclusion after accommodation was approved, filing an internal ethics determination adverse to Plaintiff without disclosure of the evidence used against him, and terminating Plaintiff.

103.     Defendant's conduct was reasonably likely to interfere with a reasonable employee's exercise or enjoyment of ADA rights.

104.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

16

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, equitable relief, prejudgment interest, costs, reasonable attorney's fees, and all other relief permitted by law.

## COUNT V

### FCRA DISABILITY DISCRIMINATION

(Fla. Stat. § 760.10)

105.    Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

106.    Plaintiff is handicapped or disabled within the meaning of the FCRA.

107.    Plaintiff was qualified to perform the essential functions of his job, with or without reasonable accommodation.

108.    Defendant subjected Plaintiff to adverse employment actions, including denial of promotion opportunity, unequal terms and conditions of employment, and termination.

109.    Defendant acted because of Plaintiff's disability and disability-related accommodation needs.

110.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, back pay, front pay, equitable relief, prejudgment interest, costs, reasonable attorney's fees, and all other relief permitted by law.

## COUNT VI

## FCRA RETALIATION

(Fla. Stat. § 760.10(7)

111. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

112. Plaintiff engaged in protected activity by requesting accommodation and opposing disability discrimination.

113. Defendant thereafter subjected Plaintiff to materially adverse actions, including exclusion from meetings and opportunities, heightened scrutiny, denial of advancement, and termination.

114. The close sequence of events, Defendant's reference to Plaintiff's remote-work status, and the pattern of retaliatory treatment support a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

115. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, back pay, front pay, equitable relief, prejudgment interest, costs, reasonable attorney's fees, and all other relief permitted by law.

## COUNT VII

## FMLA INTERFERENCE

(29 U.S.C. § 2615(a)(1))

116.    Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

117.    Defendant was a covered employer under the FMLA.

118.    Plaintiff was an eligible employee under the FMLA.

119.    Plaintiff suffered from a serious health condition that entitled him to protected FMLA leave.

120.    Plaintiff provided sufficient notice of his need for leave and was approved for FMLA leave from on or about May 24, 2023, through June 23, 2023.

121.    Upon Plaintiff's return from leave, Defendant interfered with Plaintiff's FMLA rights by using circumstances arising from Plaintiff's protected leave, including accumulated work and related consequences, against Plaintiff in evaluating and treating him, and by failing to restore Plaintiff to the same terms and conditions of employment free of leave-based penalty.

122.    Defendant's conduct restrained, denied, or interfered with Plaintiff's exercise of FMLA rights.

123.    As a direct and proximate result of Defendant's interference, Plaintiff suffered damages and other harm remediable under the FMLA.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages recoverable under the FMLA, including lost wages, salary, employment benefits, other compensation, interest, liquidated damages as authorized by 29 U.S.C. § 2617, equitable relief including reinstatement or

19

front pay as appropriate, costs, reasonable attorney's fees, and such further relief as the Court deems just.

## COUNT VIII

## FMLA RETALIATION

(29 U.S.C. § 2615(a)(2))

124. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

125. Plaintiff engaged in protected activity by taking approved FMLA leave.

126. After Plaintiff exercised his FMLA rights, Defendant subjected Plaintiff to adverse actions, including heightened scrutiny, negative treatment in performance-related processes, placement on a performance improvement plan, selective targeting in an investigation, and termination.

127. The pattern of treatment after Plaintiff's leave, together with the broader chronology alleged herein, supports a causal connection between Plaintiff's FMLA leave and Defendant's adverse actions.

128. Defendant's asserted reasons for its actions were pretextual.

129. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages and other harm remediable under the FMLA.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages recoverable under the FMLA, including lost wages, salary, employment benefits, other compensation, interest, liquidated damages as authorized by 29 U.S.C. § 2617, equitable relief including reinstatement or

front pay as appropriate, costs, reasonable attorney's fees, and such further relief as the Court deems just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award:

(a)    Back pay, lost wages, lost salary, lost employment benefits, and other past compensation;

(b)    Front pay and other future pecuniary losses;

(c)    Compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, as permitted by law;

(d)    Liquidated damages on the FMLA counts as permitted by 29 U.S.C. § 2617;

(e)    Punitive damages on the ADA counts as permitted by 42 U.S.C. § 1981a;

(f)    Reinstatement, or in lieu thereof front pay, as appropriate;

(g)    Declaratory and injunctive relief as permitted by law;

(h)    Prejudgment and post-judgment interest;

(i)    Reasonable attorney's fees and taxable costs to the extent recoverable under 42 U.S.C. § 12205, 29 U.S.C. § 2617, and Fla. Stat. § 760.11; and

(j)    Such other and further relief as the Court deems just and proper

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 14, 2026

Respectfully submitted,

/s/ Joshua M. Stahley
**Joshua M. Stahley**
Florida Bar No. 0113909
**The Law Offices of Joshua M. Stahley, P.A.**
Broward Financial Center
500 East Broward Boulevard, Suite 1710
Fort Lauderdale, Florida 33394-3005
Telephone: (954) 688-6000
Facsimile: (954) 848-2805
Direct: (954) 242-6174
Email: joshua@jmstahleylaw.com

*Attorney for Plaintiff Bradley W. Condon*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 14, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Joshua M. Stahley
Joshua M. Stahley

23

24